

**THE CITY OF NEW YORK**
# LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**STEVEN BANKS**
*Corporation Counsel*

**ZACHARY T. ELLIS**
*Assistant Corporation Counsel*
Labor and Employment Law Division
(212) 356-0839
zellis@law.nyc.gov

July 6, 2026

**VIA CM/ECF**
Hon. Robert M. Levy
United States Magistrate Judge
United States District Court
Eastern District of New York
Brooklyn Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:    *Doe v. New York Dept of Education*
> Case No. 1:25-cv-04860-KAM-RML
> Law Dep't File No. 2025-085392

Dear Judge Levy:

I am an Assistant Corporation Counsel in the Office of Steven Banks, Corporation Counsel of the City of New York, representing Defendant, the New York City Department of Education ("DOE"), in the above-referenced action. I write on behalf of the partis to respectfully request that the Court clarify the scope of the settlement negotiated in this matter. Specifically, the parties disagree as to whether the Settlement Agreement entered into between Plaintiff Jane Doe ("Plaintiff") and the DOE, and agreed to by Plaintiff on the record on April 23, 2026, encompasses claims that Plaintiff may have against non-party William Bassell in his individual or personal capacity. Plaintiff believes that any claims that she may have against Mr. Bassell in his individual or personal capacity should be excluded from the definition of "Released Parties" in the Settlement Agreement and the Waiver and General Release annexed thereto, whereas the DOE believes that all such claims properly fall within the scope of the settlement negotiated in this matter.

The parties herein state their respective positions for the Court's consideration. The parties respectfully request a conference at the Court's convenience to obtain guidance regarding the disputed release language and to facilitate completion of the settlement. The parties are available at the Court's convenience and are hopeful that, with the Court's assistance, this remaining issue can be resolved promptly and without need for further motion practice.[1]

---

[1]    Undersigned counsel will be out of the country and unavailable on July 16 and 17, 2026.

## I.    DOE's Position

### A.    Relevant Procedural History

An in-person settlement conference was held before Your Honor on April 23, 2026, at which time the parties reached a settlement-in-principle to resolve this matter.  The parties then stated the essential terms—and only the essential terms—of their settlement on the record. Specifically, undersigned counsel explained that:

> In full satisfaction of all claims that were or could have been brought in the instant lawsuit and in consideration for the execution of a waiver and general release, the City of New York, on behalf of New York City Department of Education, shall pay the single total amount of $700,000 noneconomic in nature and inclusive [of] attorneys' fees and costs to settle this action.

Ex. A, Settlement Conf. Tr. at 2:24–3:5 (Apr. 23, 2026).

Plaintiff then stated, also on the record, that she understood all the material terms and conditions of the settlement, that she had discussed those terms and conditions with her attorney of record, Annie Seifullah of Incendii Law PLLC, and that she was satisfied with the settlement. *See id.* at 3:9–20.  The Court then asked Plaintiff, "Do you understand that once we put this settlement agreement on the record here today, it will be a binding agreement.  And when you leave this courtroom, even if the final agreement hasn't been written or signed, we have a binding settlement.  Do you understand that." *Id.* at 3:21–4:1. Plaintiff answered, "Yes, Your Honor." *Id.* at 4:2.  Plaintiff then went on to confirm that she was agreeing voluntarily to the settlement and that she was satisfied with her legal representation. *See id.* at 4:3–16.

Based on these representations, the Court held that the parties had completed a settlement-in-principle and instructed them to file a stipulation of dismissal with the Court by May 25, 2026, *see id.* at 4:17–21, which deadline it subsequently extended to July 6, 2026.

On May 1, 2026, undersigned counsel sent a proposed Settlement Agreement to Ms. Seifullah for her review.  A copy is attached hereto as Exhibit "B."[2]  Paragraph "2" of the proposed Settlement Agreement states that:

> Plaintiff hereby agrees to discontinue this action and to dismiss all claims asserted in this action with prejudice, and without costs, expenses, or fees, and to release the DOE and the City of New York ("City"), all present or former officials, officers, employees, representatives, insurers, affiliates, affiliate employees, or agents of the DOE and the City, any or all of them, and their successors and/or assigns (collectively, the "Released Parties") from any and all claims, liabilities, and/or causes of action which Plaintiff has or may have against any or all of the Released Parties based on any act, omission, event, or occurrence occurring from the

---

[2]    Plaintiff is proceeding under the pseudonym "Jane Doe."  To protect her identity, her real name has been omitted from Exhibits "B" and "C."

beginning of the world up through and including the date of the execution of this Settlement Agreement, whether known or unknown, including, without limitation, any and all claims which were or could have been alleged by Plaintiff in this action arising out of the events alleged in the pleadings herein, including all claims for costs, expenses, and attorneys' fees.

Ex. B at 3.[3]

Paragraph "3" of the proposed Settlement Agreement then states that:

In consideration for the actions set forth in paragraphs "1" and "2" above, the City, on behalf of the DOE, hereby agrees to pay Plaintiff the total gross sum of seven hundred thousand dollars and zero cents ($700,000.00) ("Settlement Amount") in full satisfaction of any and all claims that were or could have been raised in this action, including all claims for costs, expenses, and attorneys' fees. . . .

*Id.*

The proposed Waiver and General Release, which is annexed as Exhibit "B" to the proposed Settlement Agreement, uses the same definition of "Released Parties" as paragraph "2" of the proposed Settlement Agreement. *See id.* at 10. Such language constitutes this Office's standard release language, used in hundreds of thousands of cases.

Nonetheless, on May 7, 2026, Ms. Seifullah provided undersigned counsel with a modified draft of the proposed Settlement Agreement and Waiver and General Release, a copy of which is attached hereto as Exhibit "C." Ms. Seifullah explained that her client objected to the proposed Settlement Agreement because:

as it's currently drafted, the definition of "Released Parties" includes all DOE employees and officials, which would operate to release Bassell personally from claims Jane Doe may have against him. This was not contemplated by parties' settlement discussions and is not something my client is willing to give up at this time.

Plaintiff modified the language in paragraph "2" of the proposed Settlement Agreement to "exclude[] only William Bassell in his individual capacity" from the definition of "Released Parties." Ex. C at 3. Plaintiff then added a new paragraph, paragraph "3," which provides as follows: "Notwithstanding the foregoing, this Settlement Agreement does not release, waive or otherwise affect any claims Plaintiff has or may have against William Bassell in his individual capacity." *Id.* The same language was added by Plaintiff to the proposed Waiver and General Release. *See id.* at 11–12.

---

[3]    References to page numbers in Exhibits "B" and "C" are to the page numbers assigned by the Court's CM/ECF system.

Undersigned counsel responded to Ms. Seifullah on May 14, 2026, explaining, in detail, why this Office could not accept such changes to its standard release, which changes, if accepted, would undermine the finality of the settlement and render it illusory by exposing the DOE and the City—and, by extension, the tax-paying public—to future liability of an unknown magnitude.  On June 16, 2026, Ms. Seifullah sent undersigned counsel a four-page memorandum, dated June 15, 2026, laying out her client's position, with supporting legal authority; however, the legal precedents that she relies upon are inapposite.[4]

After some more back-and-forth, the parties held a meet and confer on July 1, 2026, but were not able to resolve the dispute.

## B.      Governing Law

"A settlement agreement is a contract that is interpreted according to general principles of contract law."  *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007).  "Once entered into, the contract is binding and conclusive."  *Id.* (citation omitted).  It is well-settled law that, "[w]hen a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that a choice simply because his assessment of the consequences was incorrect."  *Id.* (citing *United States v. Bank of N.Y.*, 14 F.3d 756, 759 (2d Cir. 1994)).  Indeed, "[t]he settlement remains binding even if a party has a change of heart between the time he agreed to the settlement and the time those terms are reduced to writing."  *Id.* at 129 (citing *Millgard Corp. v. White Oak Corp.*, 224 F. Supp. 2d 425, 432 (D. Conn. 2002)); *see also N. Fork Country, LLC v. Baker Publ'ns, Inc.*, 436 F. Supp. 2d 441, 445 (E.D.N.Y. 2006) (explaining that, "where the parties intend to be bound, an oral settlement is binding even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time those terms are reduced to writing" (citation and internal quotation marks omitted)).

What is more, this Court has been "careful to guard against the possibility that parties will seek to manipulate settlements to gain strategic advantage, settling and unsettling litigation to suit their immediate purposes."  *Walker v. City of New York*, No. 05-CV-0004 (JBW) (JMA), 2006

---

[4]      To elaborate, the authorities cited by Ms. Seifullah in her memorandum of June 15, 2026, concern the interpretation of a fully executed settlement agreement and the application of the release language therein to a party or parties not covered by its plain language.  Those authorities are, therefore, inapplicable to this case, where the issue is the interpretation to be given to a one-sentence on-the-record recitation of the essential terms of the settlement.  In making that one-sentence recitation, undersigned counsel did not provide the complete terms of the release, nor did undersigned counsel hold himself out as doing so.  Undersigned counsel did, however, state that the release would cover "all claims that were or could have been brought in the instant lawsuit," Ex. A, Settlement Conf. Tr. at 2:24–25 (Apr. 23, 2026), and Plaintiff agreed to such language on the record, *see id.* at 3:9–4:17.  And it is beyond dispute that Plaintiff could have named Mr. Bassell as a defendant and brought claims against him in his individual or personal capacity in the instant lawsuit.

WL 1662702, 2006 U.S. Dist. LEXIS 34345, at *18 (E.D.N.Y. Apr. 4, 2006) (quoting *Media Group, Inc. v. HSN Direct Int'l, Ltd.,* 202 F.R.D. 110, 112 (S.D.N.Y. 2001)).[5]

"It is not only in this Court's power to enforce 'summarily, on motion, a settlement agreement reached in a case that was pending before it,' but it is this Court's duty to 'enforce a settlement agreement which it has approved.'" *Id.* at *16 (alterations omitted) (quoting *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974)). Additionally, "[s]ettlement agreements are strongly favored in New York and may not be lightly cast aside." *Willgerodt ex rel. Majority Peoples' Fund for the 21st Century v. Hohri*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997) (citing *Galasso v. Galasso*, 35 N.Y.2d 319, 321 (N.Y. 1974), and *Rivera v. State*, 115 A.D.2d 431, 432 (N.Y. App. Div. 1st Dep't 1985)). Thus, "[a]fterthought or change of mind are not sufficient to justify rejecting a settlement," and "[a] court may relieve a party of the consequences of a settlement agreement 'only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident.'" *Id.* (quoting *Rivera*, 115 A.D.2d at 432).

"Under common law principles adopted by the federal courts, parties are free to enter into settlement without memorializing their agreement in a fully executed document, and such agreements are as enforceable as any other oral contract." *Foster v. City of New York*, No. 96 Civ. 9271 (PKL), 2000 WL 145927, 2000 U.S. Dist. LEXIS 1251, at *8 (S.D.N.Y. Feb. 4, 2000) (citing *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80–83 (2d Cir. 1986)). Furthermore, "under either New York or federal law, an oral settlement will be binding if it was made 'in open court,' that is, if it was formally memorialized in some way in the court's record." *Doe v. Kogut*, No. 15-CV-07726 (SN), 2017 WL 1287144, 2017 U.S. Dist. LEXIS 53138, at *14–15 (S.D.N.Y. Apr. 6, 2017); *see also Monaghan*, 73 F.3d at 1283 n.3 ("[T]he federal rule regarding oral stipulations does not differ significantly from the New York rule.").

### C.    Legal Analysis

The parties negotiated a settlement on April 23, 2026, and they put on the record the essential terms of the agreement, with the plan to draft a written agreement encompassing those terms. The Settlement Agreement freely and fairly entered into between Plaintiff and the DOE, and agreed to by Plaintiff on the record on April 23, 2026, is a binding and enforceable contract, and the DOE does not understand Plaintiff to be arguing otherwise. The disagreement is over whether the phrase "all claims that . . . could have been brought in the instant lawsuit" applies to certain claims that indisputably could have been brought in the instant lawsuit.

The DOE simply cannot agree to exclude all claims that Plaintiff may have against Mr. Bassell in his individual or personal capacity from the definition of "Released Parties" in the Settlement Agreement or the Waiver and General Release annexed thereto, as such a modification to the release would render it illusory. Plaintiff could have—but did not—bring claims against Mr. Bassell in his individual or personal capacity in this action. Therefore, the claims now under consideration properly fall within the scope of the settlement negotiated in this matter.

---

[5]    For unpublished decisions, undersigned counsel herein provides parallel citations to both Westlaw and LexisNexis; however, all pinpoint citations are specifically directed to the LexisNexis citation.

Moreover, if any claims that Plaintiff may have against Mr. Bassell in his individual or personal capacity are excluded from the definition of "Released Parties," the DOE and the City—and, by extension, the tax-paying public—may be exposed to future litigation and liability of an unknown magnitude, in the inevitable event that Mr. Bassell, if sued by Plaintiff, seeks representation by this Office or, as a result of such a future lawsuit, he seeks indemnification from the DOE and/or the City for any liability assessed against him. In either event, because Mr. Bassell is not a party to this Settlement Agreement, Plaintiff's release will have no effect on what, if any, representation or indemnification rights he might have. The intent, purpose, and goal of the resolution of the instant matter, as agreed to on the record before Your Honor, was to obtain finality for all parties. The requested carve-out of Mr. Bassell from the release accepted by Plaintiff at the settlement conference, on the record, contravenes that resolution and, accordingly, is not acceptable to the DOE.

Plaintiff appears to be interpreting her agreement to release "all claims that were or could have been brought in the instant lawsuit" as if she had agreed to release only all claims that were or could have been brought *against the DOE* in the instant lawsuit. But that is not what she agreed to when she assented on the record to the essential terms of the settlement. Indeed, it was not until Ms. Seifullah sent undersigned counsel a revised draft of the Settlement Agreement and Waiver and General Release on May 7, 2026, that Plaintiff expressed to the DOE any intention of preserving any claims that she may have against Mr. Bassell in his individual or personal capacity. It is beyond dispute that Plaintiff could have named Mr. Bassell as a defendant and brought claims against him in his individual or personal capacity in this action. Because such claims could have been brought in this action, they are appropriately covered by the release.

It bears emphasizing that the release language included in the Settlement Agreement and Waiver and General Release as originally drafted is this Office's standard release language and has been used in hundreds of thousands of cases. What is more, such release language is standard practice for corporate defendants. Indeed, as one federal district court recently recognized, "it is a general practice among litigants to comprehensively resolve disputes through settlement, and such global resolution routinely includes releases extending to the parties' agents and employees." *Cook v. Costco Wholesale Corp.*, No. 3:23-CV-1502-G-BW, 2025 WL 2181703, 2025 U.S. Dist. LEXIS 148697, at *17 (N.D. Tex. May 14, 2025), *report and recommendation adopted*, No. 3:23-CV-1502-G-BW, 2026 WL 87650, 2026 U.S. Dist. LEXIS 5072 (N.D. Tex. Jan. 12, 2026), *appeal dismissed*, No. 26-10133, 2026 U.S. App. LEXIS 12073 (5th Cir. Apr. 27, 2026).

That court went on to recognize that "[t]his practice is particularly routine with respect to legal entities because they act through their agents, and in certain circumstances they may be liable for their agents' acts" and that "[a] corporate defendant settling claims made against it, therefore, typically requires that a release it secures through settlement is not later undermined or rendered illusory by claims asserted against its agents for which it might have exposure." *Id.* at *16, 17; *see also Over & Under Piping Contractors, Inc. v. Vt. Gas Sys.*, No. 2:15-cv-169, 2019 WL 77044, 2019 U.S. Dist. LEXIS 807, at *9–10 (D. Vt. Jan. 2, 2019) (acknowledging that "a release of a corporation is traditionally accompanied by a release of its agents and employees").

6

In the instructive case of *Cook*, the parties reached an oral settlement at a settlement conference before a magistrate judge under which the plaintiff agreed to execute a full and final release of all claims in exchange for a payment of $17,400.00 by the corporate defendant. *See* No. 3:23-CV-1502-G-BW, 2025 WL 2181703, 2025 U.S. Dist. LEXIS 148697, at *1–2. Although the court had previously declared the settlement agreement to be enforceable and ordered the plaintiff to execute a full and final release of all claims, *see id.* at *2, the plaintiff refused to sign the defendant's proposed release, under which terms the plaintiff would release the defendant "and its agents and representatives from any and all . . . causes of action of any kind, whatsoever, whether known or unknown, which [the plaintiff] or anyone on her behalf, may assert, asserted in the present matter, could have asserted in the present matter, or could assert in the future . . . ." *Id.* at 3 (second alteration in original).

Among other objections to the settlement agreement the defendant presented to her (and which are not relevant here), the plaintiff insisted that her release should not extend to claims against the defendant's agents and representatives. *See id.* at *4. The plaintiff argued that the defendant's "proposal was overbroad in obligating more than the terms of the settlement agreement required" and demanded a carve-out for the defendant's employees. *Id.* Although the settlement agreement did not specify the entity or individuals whom the defendant must release, the court emphatically rejected the plaintiff's position, noting the defendant's potential *respondent superior* liability for the conduct of its agents and representatives and holding that:

> [H]ere, the agreement to a full and final release of all claims is not cabined to claims against the parties, and the undersigned finds—in the absence of any evidence of contrary intent—that the parties understood their comprehensive settlement to incorporate a release of all claims against [the defendant], including claims against it agents and representatives, relating to [the plaintiff's] accident and the injuries or loss resulting therefrom.

*Id.* at *17–18.

Here, the agreement for a release of "all claims that were or could have been brought in the instant lawsuit" is not cabined to claims against the DOE. Rather, "the plain language sweeps broadly to encompass a release of claims to the full extent permitted by law." *Id.* at *14. Thus, for the reasons set forth herein, the release language in the Settlement Agreement and Waiver and General Release as originally drafted faithfully embodies the settlement reached by the parties on April 23, 2026.

## II.   Plaintiff's Position

Plaintiff agrees substantially with DOE's recitation of the procedural history. Plaintiff further agrees with DOE's cited authorities for the unremarkable proposition that settlements placed on the record are binding and should be enforced. *See, e.g., Powell*, 497 F.3d at 128-29; *Walker*, 2006 WL 1662702, at *16-18; *Foster*, 2000 WL 145927, at *8; *Doe v. Kogut*, 2017 WL 1287144, at *14-15. Those authorities, however, do not resolve the dispute presently before the Court. The parties' disagreement concerns a single issue: whether Plaintiff agreed to release

7

William Bassell from personal liability during the parties' settlement discussions and on-the-record agreement on April 23, 2026.

The relevant language placed on the record was that the settlement was "[i]n full satisfaction of all claims that were or could have been brought in the instant lawsuit" and that the City, on behalf of DOE, would pay $700,000 "to settle this action." The "instant lawsuit" was *Doe v. New York City Department of Education*, Case No. 1:25-cv-04860-KAM-RML. The only named defendant in that lawsuit was DOE. Bassell was not a defendant. Nor was he identified anywhere in the settlement allocution as a beneficiary of the contemplated release.

Therefore, resolution of the parties' dispute turns not on general principles concerning settlement finality, but on what the parties actually agreed to during the April 23, 2026 settlement conference and the allocution that followed before Judge Levy. Nothing stated on the record would have alerted Plaintiff that, by settling her claims against DOE, she was also releasing the individual she alleges committed sexual violence against her.

The DOE's remaining arguments do not alter the analysis.

First, DOE relies on the assertion that Corporation Counsel routinely includes broad release language in its settlement agreements. Plaintiff's position, however, does not turn on what language DOE typically uses in other cases; it turns on what these parties agreed to here. Standard practice is not agreement. Had DOE considered a release of Bassell personally to be a material condition of settlement, it could have raised that point during the day-long settlement conference or included it in the settlement allocution. It did neither. Indeed, when Plaintiff raised concerns regarding Bassell's continued employment within DOE, defense counsel expressly took the position that Bassell's employment status would not be part of the negotiated settlement. That exchange further supports Plaintiff's understanding that the settlement concerned the resolution of her claims against DOE, not the resolution of Bassell's personal rights, obligations, or potential liability.

Second, DOE's indemnification argument likewise highlights what is missing from the record. If DOE believed that potential future indemnification concerns required Plaintiff to release Bassell personally, that was a material term that needed to be negotiated and placed on the record. It was not. Moreover, DOE's own litigation conduct demonstrates that Bassell's interests and DOE's interests are not necessarily aligned. In the related matter pending before this Court, *Kohn v. New York City Department of Education, et al.*, No. 1:25-cv-04831-KAM-RML, in which Bassell was named as an individual defendant, Corporation Counsel did not appear on Bassell's behalf. Plaintiff therefore had no reason to understand that settling with DOE would operate as a release of Bassell in his individual capacity. Nor could she have reasonably assumed that Corporation Counsel would be obligated to defend Bassell in a hypothetical future action asserting individual-capacity claims against him arising from the alleged sexual violence.

Finally, many of the authorities cited by DOE address circumstances that simply are not present here. This is not a dispute involving a plaintiff's "change of heart." *Powell*, 497 F.3d at 129. Nor is Plaintiff seeking a strategic advantage by unsettling a completed agreement. *Walker*, 2006 WL 1662702, at *18. Nor is Plaintiff seeking a wholesale carve-out for DOE employees or

agents generally. *See, e.g., Cook*, 2025 WL 2181703, at *4. Plaintiff seeks only a narrow exclusion for William Bassell in his individual capacity.

In conclusion, Plaintiff's position is simple: she did not knowingly agree to release individual-capacity claims against the person alleged to have committed sexual violence against her. Bassell was never discussed as a released party during negotiations and the DOE did not represent him in the related *Kohn* matter. Bassell was never mentioned in the settlement allocution. Under the circumstances, it could not reasonably have occurred to Plaintiff that resolving her claims against DOE in the "instant lawsuit" would also extinguish claims against Bassell personally.

Respectfully submitted,

/s/
ZACHARY T. ELLIS
Assistant Corporation Counsel

cc:     All counsel of record (via CM/ECF)